USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 6 24 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

~~Kevin Patrick Smith~~

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

~~Detective Orongoes Badge #4078~~
~~Detective Michael Scoloveno Badge #5901~~
Lieutenant Joseph Barone Badge #1166

~~Four John Doe"s  (Detectives)~~

~~L Laura Lemle~~
  ~~Eric McPhee~~

~~Edwin Diaz~~

_____

*(In the space above enter the full name(s) of the defendant(s).  If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names.  The names listed in the above caption must be identical to those contained in Part I.  Addresses should not be included here.)*

**AMENDED
COMPLAINT**

under the Civil Rights Ac
42 U.S.C. § 1983

Jury Trial: ☒ Yes

(check one

14 Civ. 100-52 (KBF)

2015 JUN 24 A 9: 31
RECEIVED SDNY PRO SE OFFICE

**I.    Parties in this complaint:**

A.    List your name, identification number, and the name and address of your current confinement.  Do the same for any additional plaintiffs named.  Attach additional sheets as necessary.

Plaintiff's    Name ĸ  Kevin Patrick Smith _____
        ID#_____ ID# 441-15-02614 _____
        Current Institution  Manhattan Detention Complex
        Address   125 White Street _____
                 New York, New York 10013 _____

B.    List all defendants' names, positions, places of employment, and the address where each d
     may be served.  Make sure that the defendant(s) listed below are identical to those contain
     above caption.  Attach additional sheets of paper as necessary.

Defendant No. 1    Name D Detective Christopher Orongoe Shield # 40 78
        Where Currently Employed N.Y.P.D. North Brooklyn Gang Unit
        Address  30 Ralph Avenue, Room 204 _____
                Brooklyn, New York 11221 _____

Defendant No. 2    Name Detective Michael Scoloveno    Shield # 5901
                   Where Currently Employed N.Y.P.D. North Brooklyn ~~Gang Unit~~
                   Address 30 Ralph Avenue, Room 204,
                     Brooklyn, New York 11221

Defendant No. 3    Name Lieutenant Joseph Barone    Shield # 1166
                   Where Currently Employed N.Y.P.D. 41st. Precinct
                   Address 1035 Longwood Avenue,
                     Bronx, New York, 10459

Who did
what?

Defendant No. 4    Name Four John Doe"s (Detectives)    Shield #_____
                   Where Currently Employed City Of New York   N.Y.P.D.
                   Address New York City  U.S.A.


Defendant No. 5    Name Laura Lemle    Real Estate    Shield #_____
                   Where Currently Employed Lemle Realty
                   Address 177 East 87th. Street Suite 501
                     New York, New York 10128


## II.    Statement of Claim:

State as briefly as possible the <u>facts</u> of your case.   Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

A.    In what institution did the events giving rise to your claim(s) occur?
      N/A


B.    Where in the institution did the events giving rise to your claim(s) occur?
      N/A

C.    What date and approximate time did the events giving rise to your claim(s) occur?



D.    Facts: The Facts Are Enclosed .

What
happened
to you?

"See Attached"
---------------------------

Eric McPhee, Orsid Realty Corporation

    1740 Broadway  (2nd. Floor)

    New York, New York 10019

                     Defendants



Edwin Diaz : Employed At:  Lemle Realty

    Employer, Laura Lemle

    177 East 87th. Street Suite 501

    New York, New York 10128

                     Defendants

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

| Was anyone else involved? |
| --- |

_____
_____
_____
_____
_____

| Who else saw what happened? |
| --- |

### III.   Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.

Plaintiff Was Bleeding Excessively From A Gash That Was
Approximately Three Inches In Length, Located On His Upp
Right Side Of His Forehead-Brow Going Into His Scalp-
Hairline. Plaintiff Had Fractured Ribs, Both Knee Caps
Bleeding. Major Headaches,From Assault. Ambulance Attend
ant Wrapped My Head With Gauze And Bandages, To Slow Down
BLleeding. Also Manhattan Detention Complex Medical Staff
Put Fresh Bandages On My Head, Wraped My Ribs,Bandaged Knees.

### IV.   Exhaustion of Administrative Remedies:

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Administrative remedies are also known as grievance procedures.

A.   Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

Yes _____ No #️⃣#️⃣

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

_____

_____

_____

B.    Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?

   Yes _____    No _____    Do Not Know _____

C.    Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?

   Yes _____    No _____    Do Not Know _____

   If YES, which claim(s)?

   _____

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?

   Yes _____    No _____

   If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

   Yes _____    No _____

E.    If you did file a grievance, about the events described in this complaint, where did you file the grievance?

   _____

   1.    Which claim(s) in this complaint did you grieve?

      _____

      _____

   2.    What was the result, if any?

      _____

      _____

   3.    What steps, if any, did you take to appeal that decision?  Describe all efforts to appeal to the highest level of the grievance process.

      _____

      _____

      _____

      _____

F.    If you did not file a grievance:

   1.    If there are any reasons why you did not file a grievance, state them here:

      _____

      _____

      _____

_____
_____
_____

2.   If you did not file a grievance but informed any officials of your claim, state who you informed, when and how, and their response, if any:

_____
_____
_____
_____
_____
_____

G.   Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

_____
_____
_____
_____
_____
_____
_____

Note:   You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.

V.   Relief:

State what you want the Court to do for you (including the amount of monetary compensation, if any, that you are seeking and the basis for such amount).   Compensatorial Damages In The Amount Of 400,000.00---Punitive Damages In The Amount Of Twenty Five Million Dollars.,25,000,000.00 ---Attorney Fees Pursuant To 42 U.S.C.A. 1988.--- An Award Of The Plaintiffs Costs Of All Suits, Whom It May Be Applicable. === All Other Relief That Is Appropriate And Proper Under The Circumstances.

_____
_____
_____
_____

_____

_____

_____

**VI.    Previous lawsuits:**

<div style="border:1px solid #000; display:inline-block; padding:4px;">On<br>these<br>claims</div>

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes _____  No _____

B.    If your answer to A is YES, describe each lawsuit by answering questions 1 through 7 below.  (If there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using the same format.)

1.    Parties to the previous lawsuit:

Plaintiff _____

Defendants _____

2. Court (if federal court, name the district; if state court, name the county) _____

_____

_____ 3.    Docket or Index number _____

_____ 4.    Name of Judge assigned to your case_____

5.    Approximate date of filing lawsuit _____

6.    Is the case still pending?  Yes _____  No _____

If NO, give the approximate date of disposition_____

7.    What was the result of the case? (For example:  Was the case dismissed?  Was there judgment in your favor?  Was the case appealed?) _____

_____

_____

<div style="border:1px solid #000; display:inline-block; padding:4px;">On<br>other<br>claims</div>

C.    Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?

Yes _____   No _____

D.    If your answer to C is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)

1.    Parties to the previous lawsuit:

Plaintiff _____

Defendants _____

2.    Court (if federal court, name the district; if state court, name the county) _____

_____

_____ 3.    Docket or Index number _____

_____ 4.    Name of Judge assigned to your case_____

5.    Approximate date of filing lawsuit _____

*Rev. 01/2010*                                  6

6.   Is the case still pending?  Yes _____   No _____
     If NO, give the approximate date of disposition_____

7.   What was the result of the case? (For example:  Was the case dismissed?  Was there
     judgment in your favor?  Was the case appealed?)  _____
     _____
     _____


**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this **19** day of **June**_____, 20**15**

                        Signature of Plaintiff   *Kevin Patrick Smith*
                        Inmate Number  **14-cv-10052   (KBF)  ID#441-15-02614**
          b             Institution Address **Manhattan Detention Complex**
                        ~~125 White Street~~
                        New York, New York
                        10013


Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint and provide
        their inmate numbers and addresses.


I declare under penalty of perjury that on this **19** day of **June**_____, 20**15** I am delivering
this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for
the Southern District of New York.

                        Signature of Plaintiff:   *Kevin Patrick Smith*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KEVIN SMITH | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.:Pending |
| | ) | Complaint for Damages |
| Detective Orongoes, Badge #4078 | ) | |
|    of and for 73rd Precient, | ) | |
|    1470 E. New York Av. | ) | |
|    Brooklyn, N.Y. 11212-5007, | ) | |
| Other unknown Officers, | ) | |
| EDWIN DIAZ, | ) | |
|    Employed at: | ) | |
|    Copperwood Realestate | ) | |
|    New York, New York | ) | |
| LAURA LEMLE | ) | |
|    177 East 87th St. Suite 501 | ) | |
|    New York, N.Y. 10128 | ) | |
| ERIC McPHEE, Orsid Realty Corporation | ) | |
|    1740 Broadway (2nd Floor) | ) | |
|    New York, N.Y. 10019 | ) | |
|    Respondents/Defendants. | ) | |

COMPLAINT PURSUANT TO
42 U.S.C. §§ 1983, 1985(3)

NOW COMES, Kevin Smith, hereinafter "Plaintiff", filing Pro Se, and a federal prisoner, respectfully motioning this Honorable Court to set this Complaint due to:

1) This is an action for damages due to trespasses of the Defendants, acting directly or indirectly, that violated the Plaintiff's Constitutional Rights, thereby action is sought via 42 U.S.C. §§ 1983 and 1985(3),

2) This action is set to hold each of the above named officer(s) in their individual capacity, and upon further discovery in their official capacity as well, and

3) Being the right of the Plaintiff to redress his grievances.

   This statement is supported by the foregoing:

1

JURISDICTION

This action is brought pursuant to 42 U.S.C. §§§ 1983, 1985(3), 1988, and the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

This Court has subject matter of this action under 28 U.S.C. §§ 1331 and 1343(a)(1),(3), and (4).

PARTIES

Plaintiff is a resident of New York City, New York, and at all times relevant to the allegations of the complaint was a citizen of the United States, and a resident of Manhattan County.

At all times relevant to this action, defendant detective Orongoes, Badge #4078,  and other unknown Officers, was police officers employed by the North Brooklyn Gang Task Force in the 73rd Preceint, 1470 E. New York Ave., Brooklyn, New York, N.Y. 11212-5007.

At all relevant times, these defendants were acting as the agent, servant, and employee of the 73rd Preceint in northern Brooklyn, New York, N.Y.

The Defendants that were employed by: the 73rd Preceint, noted above, and if it comes to light they were employed other preceint(s) with regards to the unknown names of the soon to be identified officers Plaintiff will supplement and apply such relevant facts and names, is sued in his individual, and official (if it can be proved via factual evidence) capacity.

At all relevant times, and in all their actions, the defendants , as with regards to the officers, were acting under color of law

2

and pursuant to their authority as police personel.

That defendant Mr. Edwin Diaz was employed by Laura Lemle to act as superintendant of the plaintiff's residence that was a apartment building located at 1324 Lexington Ave., Apt. 18, New York City, Manhattan, New York 10128. Mr. Diaz sought out the defendant officers to atack, either directly or indirectly, and arrest the Plaintiff on false accusations, and as well on two prior occasions made knowingly false accusations that cost the Plaintiff money for lawyers fees and missed days of work, etc., etc..., in order to harass the Plaintiff for his status as a Rent Control Tennant. This will be infered on the fact that Mr. Diaz sought out police officers from another district that was approximately a hour to an hour and a half drive from the above noted residence of the Plaintiff, thereby the defendant Officers had no business being involved with the case., due to t the fact it was far outside their juridiction. This fact along with others explained hereafter, and in futher detail upon dis-covery, show the overt relationship Mr. Diaz has with the defen-dant officer(s).

That Mr. Diaz was in fact harassing the Plaintiff due to his status of Rent Control Apartment. And that the Plaintiff has Constitutional Interest in his Property, as outlined in the Fourteenth Amendment to the Constitution of the United States of America, and thus Mr. Diaz actions were in fact violations of his Constitutional Rights, futher substantied hereafter, and futher after discovery. Such action(s) of Mr. Diaz can be remedied via 42 U.S.C.A. §§ 1983, and 1985(3).

3

That defedant Ms. Laura Lemle is in fact the owner of the
apartment of the Plaitiff, and she had the motive to directly
or indirectly, harass the Plaintiff for years to force him out
of his Rent Controlled Apartment, as well as the Plaintiff's
mother and father. Ms. Lemle verbally threatened the Plaintiff
many times, she cut his cable to his satilite dish, to poison
the ally cats that lived on the streets, attempted to get the
Plaitiff's mother, after his father had passed away, to sign
papers to releasse the Rent Control Status of their tennantcy,
and these actions were witnessed by numerous individuals, and
the Plaintiff will be obtaining affidavits from, as well as
visited upon other tennants also. Ms. Lemle supported Mr. Diaz's
actions, and filed accusations criminally and civilly on several
occassions. Her direct or indirect actions has accounted for
numerous violations of the Plaintiff'f Constitutional Rights
of liberty of interest in property and has the status of being
the main purpatrator in this instance. Such action(s) of Ms. Lemle
can be remedied via 42 U.S.C.A. §§ 1983, and 1985(3).

## LIBERAL CONSTRUANCE DOCTRINE

The Plaintiff respectfully asks this honorable Court to
Liberally constru this Complaint in accordance with the United
States Supreme Court standings in the following case law:

Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728, 118 L. Ed
2d 340(1992);

4

Neitzke v. Williams, 490 U.S. 319, 324 - 325, 109 S. Ct. 1827,
104 L. Ed. 2d 338 (1989);

Haines v. Kerner, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed 2d 652
(1972);

"... a federal district court is charged with liberally con-
struing a complaint filed by a pro se litigant to allow the deve-
lopement of a potential meritorius case." Erickson v. Pardus, 551
U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081.


STATEMENT OF THE FACTS


On Tuesday, January, 15, 2013, at approximately 9:30 P.M.,
Kevin Smith, hereinafter "Plaintiff", walked out of his building
to go to Annies, which is a 24 hour market located at 1328 Lex-
ington Avenue, Manhattan    , New York 10128. Plaintiff's reason
for this errond was to obtain some cat food to feed the homeless
alley cats that are located on the street where the plaintiff
resides.

While exiting the store with a grocery bag, containing a box
of cat food and two throw away bowls, plaintiff was attacked by
seven individuals right after one of the attackers yelled "Kevin".
During the attack, the Plaintiff was kicked and hit numerous
times for approximately two to four minuets while the Plaintiff
was laying on the ground in the fetal possition. During the
assault the men were yelling "Where's the gun?" repeatedly and
the Plaintiff was screaming back with the reply of "I don't have

a gun!!" repeatedly all while the assault kept going on. Nearing the end of the assault, the men started to pat the Plaintiff down, still requesting where's the gun, an finally one of the officers screamed out "He has no gun!", One of the men, that later came to be known to the Plaintiff as Detective Oronges, reached into his coat pocket and pulled out a gun and stated "This is your gun", and the Plaintiff stated "No that's not my gun", and Det. Orongoes stated "This is your Fucking Gun". Then the men cuffed the Plaintiff and picked him up off of the ground and dragged him to a unmarked police car, of which there were three unmarked police cars, and the group of men were part of the "Brooklyn North Gang Unit" of the 73rd Precient, 1470 East New York Ave., Brooklyn, New York 11212-5007.

The Plaintiff was bleeding excessively from a gash that was approximately three inches in length, located on his upper right side of his forehead/brow going into his scalp/hairline.

The Plaintiff was then transported to the 19th Precient. While being transported, Det. Orongoes stated "You can take a beating.", the Plaintiff replied "Are you guys Irish?" Det. Orongoes stated "No, I am spanish.", the other Officer stated "yeah I am." The Plaintiff then asked "This is how you treat Irish People?" Det. Orogoes then replied "Oh you reallytake your Irish heritage serious-ly." The Plaintiff stated "Yes I do."

When entering the precient, the Plaintiff could hardly walk, so the two officers assisted the Plaintiff while he was walking very roughly, the Captain on duty seen the three of them come in and followed them untill they reached the Bull Pin, and ordered that Det. Orongoes and the other officer call an ambulance for the Plaintiff

due to the amount of blood that was coming out of the Plaintiff's head and it was all over his face and neck. The Captain walked away and the two officers took the Plaintiff down the hall out of hearing range of a prisoner in the Bull Pen, who was an African American that was tall and thin in his 20's, and another prisoner, who was a African American Lady in her early 30's, who was handcuffed to a bar and sitting on a bench in the hall way right outside of the Bull Pen, and Det. Orongoes stated "We're not going to any fucking Hospital. You tell the Ambulence people you don't want togo. We don't want to be stuck there all night. And you do what we say or we will give you another beating." The officers then put the Plaintiff into the Bull Pin.

When the ambulence people showed up, it was a Spanish lady and the Plaintiff is unsure of the other person who was with the Spanish Lady, this was due to the blood in the Plaintiff's eyes, but there were two of them, the Spanish Lady walked up and seen the Plaintiff and upon sight she immediately turned around and went back to the Ambulance to retrieve gauz and bandages. The Spanish Lady first wrapped the Plaintiffs head the best she could and she stated "lets go, I have the Ambulance outside, come on, lets go." The Plaintiff replied "No", because the Detective and the other officer were standing right there watching. The Spanish Lady then asked "What happened to you?" The Plaintiff stated "Oh, I just slipped and fell." The African American Lady sitting on the bench handcuffed to the rail gave the Plaintiff a crazy look, and so did the Spanish Lady. The Plaintiff then picked up his pant legs and showed the Spanish Lady his knees, and both the Spanish Lady and the African

American Lady both made a sound of disbelief upon seeing the lacerations on his keens. The Plaintiff asked her if she had any peroxcide to clean up the lacerations and she stated "No, come on lets go to the Hospital and get you some help," and the Plaintiff again told her "No" and she became frustrated and angry with the Plaintiff and insisted many more times that the Plaintiff should go to the Hospital and get treatment for the severe lacerations. the Plaintiff stated time and time again "no". The Spanish Lady then asked the Plaintiff to sign the refusal form and so the Plaintiff did.

After the Ambulance people left, the Detective and the other Officer took the Plaintiff to have him fingerprinted and take a photograph of him. During the process, the Detective and Officer were trying to insight the Plaintiff by yelling at him and being very rude as well as aggressive. The Plaintiff, while in extreme pain went along with their commands and the Captain and other Officers witnessed this . The Plaintiff was then escorted very roughly by the Detective and the other Officer, back to the Bull Pin.

The Detective and the other officer came back approximately one hour later and handcuffed the Plaintiff and assisted the Plaintiff very roughly again to the unmarked vehicle. They all went to Central Booking, the drive took approximately twenty minutes. When arriving the Detective and the other Officer took the Plaintiff out of the vehicle and assisted the Plaintiff again very roughly in to the building. When entering the room for receiving, the recieving Officer, a spanish male, upon sight stated "Whoa, whoa, your not bringinghim in here like that!" This reaction was due to the amount

8

of blood covering the Plaintiff's face and neck, and he was still
bleeding from the laceration on his head. The Detective and the
other officer took the Plaintiff out of the room and down a hallway
outside a bathroom, the other Officer went in and retrieved some
wet paper towls. He then proceeded to wipe and scrub the Plaintiff's
face and neck violently for approximately 5 to 10 minutes. The
officer kept going back to get more paper towls serveral times,
this was due to the amount of dried blood on his face and neck.
The Detective and the other officer then took the Plaintiff back
to the receiving room and the Detective and the other officer, took
the Plaintiff to a cell with the receiving officer.

At apporoximately 2 to 5 a.m. the next morning, January 16, 2013
, the Plaintiff was taken for arraingment, at which during the
hearing the District Attorney stated that the information that
brought the officers to the supposed suspicion came from a Mr. Edwin
Diaz, who was the Superintendant for the Plaintiff's Apartment
Building where he resided, who also worked for the police depart-
ment as a Confidential Informant.

The Plaintiff has had other false reports made by Mr. Diaz and
all of them were dismissed. One was for a Criminal Mischief case,
and another case involving two counts for Aggrivated Harassment-
2nd:Communitcate-Phone/Telegraph/Written Com to Annoy/Alarm, and
Aggrivated 2nd: Cause Communication with a person to annoy/alarm.
And the actions of Mr. Diaz were incited by his employer and the
owner of the apartment building where the Plaintiff formerly
used to reside, located at 1324 Lexington Ave. Apt. 18, New York
City, Manhatton, New York 10128, via direct and indirect actions
in a concerted action to remove the Plaintiff from his rightful

tenantcy of a statutory protected class of citizens via New York
Rent Contol Laws, and that the rent was to stay the same from the
original price from the instance that his parents moved in to the
said apartment, Plaintiff's parents being Micheal and Hellen Smith,
and the Plaintiff being the surviving son presiding at the residence
prior to his parents passing away and maintaining residence after.
The Land Lord/Owner of the said apartment buildng, being Laura Lemle
had in fact been harassing the Plaintiff's parents for years to
force them out of the apartment due to the status of the tenants
being rent control and not rent stabulization.

Laura Lemle had performed acts of harassment from cutting the
tennants cable satlelite dish cable, to seeking civil suits, verbal
threats, to the Plaintiff and a numerous other tennants. But, one
has to prove the nexus to create and prove the facts to incurr a
inference of conclusion and this is proven via Mr. Diaz, in that
Mr. Diaz came after the Plaintiff and pursued numerous false alle-
gations that lead to the situation of the Plaintiff being assaulted
by people that were operating under the color of law, and this is
factual, due to the obvious facts that anyone would come to the
inference to inquire of "Why were the Officers of the North Brooklyn
Gang Task Force doing in Upper E. Side Manhatten, an hour to an hour and
half driving distance from their jurisdiction, steaking out the
Plaintiff for a possession of a firearm by a felon accusation?"
This will not only be shown by this clear and overt fact, but
via other facts that the Plaintiff will supplement in the event
of Discovery into the facts. But the one that is plain at this moment
is the Officers stated herein had no business in E. Side Manhatten!

to futher show the statments herein to be true that LauraLemle"s
actions could infer such motives are that :

1) LauraLemle had the Plaintiff fired from his job that he was
   employed at for 12 years,

2) The supervisor before Eric Mcphee never had a problem with
   the Plaintiff; the former supervisor being Espina,

3) LauraLemle had filed a civil suit on the Plaintiff for frivolous
   acts, in which the Plaintiff had to pay an attorney $3,500.00
   for,

4) The fraudulent charges pursued by Lori Lemel and her employee,
   Mr. Diaz,

5) On numerous occasions LauraLemle attempted to and did creqate
   false claims that the Plaintiff was not paying rent, and in
   fact pursued eviction for the false claim of non-payment of
   rent, and numerous times for several other tennants.

Thus, the motive of the basis of the above stated facts infringe
upon the Plaintiff's established Constitutionally Protected Right ,
that was and is protected via New York Statute as well, via rent
control laws. The Plaintiff was under the protection of this law
and still is. The Plaintiff had also filed a civil suit for Laura
Lemle for overcharging him with rent in excess of $1,200.00 dollars
a month for many years to incur an amount totaling at $276,000.00
dollars. The Plaintiff has been making inquiry into this instance
for years prior to the filing of suit verbally with Laura Lemle.

11

## FEDERAL THEORIES OF RECOVERY

The action(s) and omission(s) described above, the defendants engaged in acts, directly or indirectly, under color of state authority by the defendants in a concerted action, and thereby deprived the Plaintiff overtly of his rights secured to him by the Constitution of the United States of America, as well as various state statutes, including, but not limited to, the Plaintiff's:

a. Forth Amendment right to be free from unlawful search and seizure of his person;

b. Fifth and Fourteenth rights to due process of law, including the right to be free from unjustified and excessive force utilized by police; and this standard is set via the Eigth Amendment standards,

c. The Fourteenth Amendment right to property interest, and.

## STATE LAW THEORIES OF RECOVERY

The Plaitiff would like to reserve his right to supplment upon futher discovery of the possible state recovery that Plaintiff can request under supplemental jurisdiction.

12

)PRAYER FOR RELIEF

The Plaintiff Prays for this Honorable Court to fist and fore-
most grant the Plaintiff the opportunity to request Interrogatories
as well as other Discovery materials that will futher substantiate
his claim(s) against the known and unknown trepassers of the Plain-
tiff's Constitutionally and Statutory Protected Rights, in order to
hold accountable all of the People that wronged him and create
justice for these inherant wrongful ilwill torts.

As it stands at this point, the Plaintiff demands the following
relief:

A. Compensatorial Damages in the Amount of $400,000.00.

B. Punitive Damages in the Amount of $25,000,000.00

C. Attorney fees pursuant to 42 U.S.C.A. § 1988,

D. An award of the plaintiff's costs of all suits, whom it may
   be applicable, and,

E. All other relief that is appropriate and proper under the
   circumstances.

Respectfully Submitted on this the ⊥⊥ day of December, 2014,


*Kevin P. Smith*
Kevin Smith Reg. No. 32952-054
FCI-Allenwood
P.O. Box 2000
White Deer, PA 17887-2000

13

Pro-Se Office
United States District Court
Southern District Of New York
United States Courthouse
    500 Pearl Street
New York, New York 10007

                    Docket# 14-cv-10052 (KBF)

RECEIVED
SDNY PRO SE OFFICE
2015 JUN 24  A ₠ 31

Kevin Patrick Smith
              Plaintiff


        VS.



Detective Orongoes Badge #4078
Et Al
              Defendants


To: Clerk Of The Court,

Enclosed Is My Amended Complaint, Which Is Still My Original

Complaint. I Added Two Additional John Doe"s, Detective Michael

Scoloveno Badge#5901. And Lieutenant Joseph Barone Badge #1166.

  Please Be Advised That There Are Still Four John Doe"s

That This Plaintiff Does Not Have There Names, Badge Numbers,

And Address"es Yet. This Is Not The Plaintiff"s Fault. The

Plaintiff Had A Phone Conference For May 15,2015 ,Cancelled

And June 19,2015 Cancelled By Defendants Lawyer: Katherine

Abigail Byrns. Next Phone Conference Date Is July 17,2015.

This Is A Stale Tactic Used By The Defendants, To No₱ Discovery

Report. Plaintiff Requested The Full Discovery Files, And

Has Not Recieved Anything. It Is Vital That Plaintiff Recieves

Discovery. Also Plaintiff Has Interrogatories For Detective

                    ( 1 )

Orongoes Badge#4078. And 73rd. Precient. And 19th. Precient.

Laura Lemle,Eric McPhee, Edwin Diaz. And Central Booking.

AmBulence Attendants,.

There Are Alot Of Interrogatories That Are Vital To The

Plaintiffs Case For The Defendants Answers.

Please File This On My Docket Sheet.

Date June 19, 2015 *Kevin Patrick Smith*

        Kevin Patrick Smith

        ID# 441-15-02614

        Manhattan Detention Complex

          125 White Street

        New York, New York

          10013



KEVIN PATRICK SMITH
ID# 441-15-02614
MANHATTAN DETENTION Complex
125 WHITE STREET
NEW YORK, N.Y. 10013

RECEIVED
S.D.N.Y PRO SE OFFICE
2015 JUN 24 A 8: 52

To:
PRO-SE OFFICE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES COURT HOUSE
500 PEARL STREET
NEW YORK, N.Y. 10007